In the Matter of READING COMPANY, Debtor.

Appeal of INTERSTATE COMMERCE COMMISSION.

No. 75–1505.

United States Court of Appeals, Third Circuit.

Argued Oct. 2, 1975.

Decided Oct. 28, 1975.

William J. Taylor, Joseph I. Goldstein, Philadelphia, Pa., for appellees, Andrew L. Lewis, Jr. and Joseph L. Castle, Trustees of the Reading Company, Debtor; Morgan, Lewis & Bockius, Philadelphia, Pa., of counsel.

Fritz R. Kahn, Gen. Counsel, Kenneth G. Caplan, Interstate Commerce Commission, Washington, D. C., for appellant.

Before MARIS, VAN DUSEN and HUNTER, Circuit Judges.

## OPINION OF THE COURT

MARIS, Circuit Judge.

This is an appeal by the Interstate Commerce Commission from two orders of the district court authorizing the trustees of the debtor railroad corporation to pay certain special counsel specified sums for their legal services and in reimbursement of costs incurred by them in the rendition of such services. The orders also determined that approval of these payments by the Interstate Commerce Commission was unnecessary. The two firms of lawyers involved had for many years prior to the reorganization proceedings represented the debtor railroad in Federal Employers' Liability Act cases and other litigation arising from railroad operations. After the institution of the reorganization proceedings the trustees, with the express approval of the district court, appointed them as special counsel to handle the same types of litigation which they had previously conducted for the railroad. Subsequently, the trustees petitioned the district court for authority to pay these lawyers interim compensation and to reimburse them for their expenses incurred in the rendition of those services. From the orders of the district court authorizing such payments and determining that Commission approval of them was unnecessary the present appeal was taken by the Commission.

The Commission argues that its approval of the allowances in question is made mandatory by the express provisions of section 77(c)(2) of the Bankruptcy Act. We are thus called upon to determine the meaning and scope of that subsection in this regard. The subsection, in pertinent part, provides:

"The judge shall in his discretion confirm the appointment of such legal counsel for the trustees as they shall select, with power of removal. The trustee or trustees and their counsel shall receive only such compensation from the estate of the debtor as the judge may from time to time allow within such maximum limits as may be approved by the Commission as reasonable. The trustee or trustees so appointed upon filing such bond, shall have all the title and shall exercise, subject to the control of the judge and consistently with the provisions of this section, all of the powers of a trustee appointed pursuant to section 72 of this act or any other section of this title, and, to the extent not inconsistent with this section, if authorized by the judge, the powers of a receiver in an equity proceeding, and, subject to the control of the judge and the jurisdiction of the Commission as provided by Chapter 1 of Title 49 as on August 27, 1935, or thereafter amended, the power to operate the business of the debtor. . . ." 11 U.S.C.A. § 205(c)(2).

In applying this subsection in *In re New York, New Haven & Hartford Railroad Co.*, 221 F.Supp. 288 (1963) the District Court for the District of Connecticut had held that:

"The criterion which must be used to determine what legal services do and what do not come within the provisions of § 77, sub. c(2) derives from the nature of the issues involved in the legal work performed and whether or not they are a part of the reorganization proceedings, as such. The test is whether or not the legal service performed is a part of regular, normal legal business of the New Haven Railroad and which any railroad, not in reorganization, might carry on, rather than legal work rendered in connection with and peculiar to the New Haven's reorganization proceedings and reorganization plans." 221 F.Supp. at p. 289.

This construction of the statute, which appears to have been acquiesced in by the Commission at the time, was followed by the District Court for the East-

ern District of Pennsylvania in *In re Lehigh Valley Railroad Company*, 360 F.Supp. 789 (May 10, 1973). One day later, the Commission served a report in the *New York, New Haven & Hartford R. Co. Reorganization*, 342 I.C.C. 632 (1973), in which it decided, contrary to the district court decisions to which we have referred and to its prior acquiescence in them, that the provisions of section 77(c)(2) with which we are here concerned require Commission approval of the maximum limits of the compensation of all legal counsel selected by the trustees, whose appointments have been confirmed by the district court, without regard to the nature of the legal work for which they have been retained by the trustees. Urging the soundness of this new construction of the statute, the Commission asks us to apply it in the present case.

The trustees, on the other hand, rely upon our judgment order entered on September 20, 1974, 503 F.2d 1399, affirming on appeal the order of the district court *In re Lehigh Valley Railroad Company*, 360 F.Supp. 789 (E.D.Pa.1973). Since our judgment order was entered more than a year after the Commission had announced its change of view in *New York, New Haven & Hartford R. Co. Reorganization*, 342 I.C.C. 632 (1973), the trustees argue that our court has rejected the Commission's new construction and affirmed the construction previously placed upon the statute by the district courts in Connecticut and Pennsylvania. It appears, however, that in the *Lehigh Valley Railroad Co.* case the services involved were not those of legal counsel but rather of an Interstate Commerce Commission practitioner who was not a member of the bar. Under these circumstances, we were satisfied that the provisions of section 77(c)(2) were not applicable to that case. Accordingly, while we referred in a footnote to *In re New York, New Haven & Hartford Rail-*

road Co., we did not find it necessary to consider the merits of the construction which it placed upon section 77(c)(2).[1] That question is, accordingly, open and we now proceed to address ourselves to it.

In support of its position that section 77(c)(2) is not limited to compensation for services performed in furtherance of the reorganization proceeding and plan, the Commission refers to subsection (c)(12) of section 77, 11 U.S.C.A. § 205(c)(12), which is concerned with the compensation of parties in interest, reorganization managers and committees and other representatives of creditors and stockholders, and points out that that subsection expressly limits the compensation to be paid to such persons to services rendered and expenses incurred "in connection with the proceedings and plan." In its 1973 report in the *New York, New Haven & Hartford R. Co. Reorganization* the Commission said:

"The limitation as to service performed in furtherance of the reorganization proceeding and plan so carefully imposed in subsection (c)(12) is entirely missing from subsection (c)(2). Cf. *New York, N.H. & H.R. Co. Reorganization; supra.* This patent omission clearly indicates that Congress intended the distinction in the standards to be applied by the Commission in establishing maximum limits of compensation for counsel of the debtor's trustees on the one hand, and, on the other, for those interests primarily concerned with creditors' rights and the reorganization plan. The distinction drawn by the Bankruptcy Act is between persons employed by the trustees for legal counsel in the performance of their dual functions of running the railroad and attending the estate during the reorganization proceeding and persons employed by bondholders or other parties involved in the reorganization proceeding and in the devel-

---

1. By entering a judgment order without opinion we indicated that we regarded our decision as having no precedential value. Internal Operating Procedures, Court of Appeals, Third Circuit, Para. D1(a).

opment of a reorganization plan as required by section 77(d).

"While section 77 of the Bankruptcy Act does contain, as between subsection c(2) and c(12), the cited distinction regarding the nature of the work for which compensation is sought, there is no such distinction in subsection (c)(2). In plain and specific language Congress clearly indicates its intent to have subsection (c)(2) cover all monies which are to be paid out of the estate for counsel for the trustees. Whether such counsel is employed by the debtor's trustee for services connected with the railroad's operations, or with the development of a reorganization plan, or with various phases of the reorganization proceeding, or whether the claim of such counsel is for services rendered or for expenses incurred in connection with those services—the only statutory basis for paying such counsel is subsection (c)(2); and, under that provision, the payment must be within the maximum limits set by this Commission." 342 I.C.C. at p. 638.

■ We are constrained to agree with the view of the Commission thus stated that the absence from subsection (c)(2) of the limitation to services and expenses "incurred in connection with the proceedings and plan" which appears in subsection (c)(12) indicates that the services to be compensated under subsection (c)(2) were not intended to be so limited. However abstractly logical may be the contrary view expressed by the district court in *In re New York, New Haven & Hartford Railroad Co.*, 221 F.Supp. 288, 289 (D.Conn.1963), that legal services performed as part of the regular, normal legal business of the railroad should not be deemed to be within the purview of subsection (c)(2), and we find the court's discussion quite persuasive as to this, we nonetheless are satisfied that the unambiguous language of the subsection does not support it. By the phrase "their counsel" appearing in the operative sentence:

"The trustee or trustees and their counsel shall receive only such compensation from the estate of the debtor as the judge may from time to time allow within such maximum limits as may be approved by the Commission as reasonable."

Congress was clearly referring to the "legal counsel for the trustees" the selection of whom by the trustees and their confirmation by the court were provided for in the immediately preceding sentence of the subsection. We find no distinction whatever in subsection (c)(2) between the services of such counsel in railroad operation and their services in connection with the reorganization proceedings and plan. Moreover, we observe that subsection (c)(2) itself expressly authorizes the trustees to operate the business of the debtor railroad. Thus legal services rendered in the ordinary operation of the debtor railroad are services rendered to the trustees since theirs is the ultimate responsibility for the operation. We are clear that if the jurisdiction of the Commission over the extent of compensation to be paid to counsel is to be limited to services rendered in connection with the proceedings and plan, it must be done by Congressional amendment of the statute, not by judicial gloss upon its plain language.

■ As we read subsection (c)(2) the dichotomy which that subsection does envisage is between those legal counsel who have been appointed by the trustees and confirmed by the district court on the one hand and on the other hand those lawyers employed by the debtor railroad, such as house counsel or the special counsel retained by the latter, who have not been specially appointed by the trustees and confirmed by the court as counsel. It is the manner of appointment of counsel which the statute makes the criterion and not the nature of the services rendered by them. The plain language of the statute compels this conclusion. Indeed, the Commission itself concedes that section 77(c)(2) does not give it jurisdiction over the compensation of all counsel who render services on behalf of a debtor railroad during the reorganization. Rather,

says the Commission in its brief in this court:

". . . it is the Commission's position that Section 77(c)(2) only requires referral to the Commission of all petitions for compensation rendered by all counsel *retained by the trustees whose appointment and compensation is also approved by the Reorganization Court.* Hence, the Commission does not presume, and indeed the statute does not require, the Commission to set maximum limits on compensation paid to the railroad's in-house legal staff or law firms retained by the in-house staff to represent the railroad in various matters including FELA claims. The distinction here is that the compensation paid for these services would be part of the railroad's overall normal operating budget. It is only when the legal services are rendered by counsel specially retained by the trustees and approved by the Court that section 77(c)(2) becomes applicable." Appellant's brief pp. 19–20.

■ Whether in view of the fact that the legal counsel here involved had been retained by the railroad for many years prior to reorganization, it was necessary for the trustees again to appoint them and for the district court to confirm their appointment we need not consider. For the fact is that they were so appointed and confirmed and were thereby brought within the express requirements of section 77(c)(2) that the maximum limits of their compensation should be fixed by the Commission. The determination of the district court in the orders appealed from that such Commission approval was unnecessary must accordingly be reversed.

The orders of the district court will be vacated and the cause remanded for further proceedings not inconsistent with the opinion of this court.